**Weldon S. ABBOTT, et al., Plaintiffs,**

v.

**Carvel R. SHAFFER, et al., Defendants.**

**Civ. Nos. C82–0628A, C–82–0235K.**

United States District Court,
D. Utah, C.D.

May 11, 1983.

Lowell S. and Laverne Peterson, pro se.

David Young Payne, Salt Lake City, Utah, for Raymond Lambert.

Denton M. Hatch, Christensen, Jensen & Powell, Salt Lake City, Utah, for Bahrs.

Paul T. Moxley, Salt Lake City, Utah, for defendant Michael D. Wright.

Rodney G. Snow, Clyde, Pratt, Gibbs & Cahoon, Salt Lake City, Utah, for Cindy Mitchell.

Jack H. Molgard, Brigham City, Utah, for plaintiff Spickermans.

Rulon Burton, Salt Lake City, Utah, for William Perry.

Craig T. Vincent, Salt Lake City, Utah, for Melvin Lancaster.

Bennett P. Peterson, Bountiful, Utah, for DuWayne R. Swenson.

Dean H. Becker, Snow & Halliday, Salt Lake City, Utah, for Kenneth W. Kinzel.

William D. Marsh, Ogden, Utah, for Graham C. Shaw.

Ben Rawlings, Salt Lake City, Utah, for Brad Freckleton.

George A. Hunt, David W. Slaughter, Snow, Christensen & Martineau, Salt Lake City, Utah, for AVCO Financial Services of Utah, Inc. and Ralph Selway.

William H. Henderson, Salt Lake City, Utah, for Beesley Music Co.

Carvel R. Shaffer, Bountiful, Utah, for defendants, Carvel R. Shaffer, and David M. Pinney.

Royal K. Hunt, Salt Lake City, Utah, for Holladay Bank & Trust, David Pinney and Valerie Parker.

David B. Boyce, Backman, Clark & Marsh, Salt Lake City, Utah, for Home Sav. & Loan and William Cox.

Gary E. Atkin, Salt Lake City, Utah, for BEC Development, Inc., A. George Kliney and Clark Brown.

Stephen G. Stoker, Fox, Edwards & Gardner, Salt Lake City, Utah, for Janet J. Palmer.

Dwight L. King, Salt Lake City, Utah, for Draper Bank & Trust.

M. Byron Fisher, Fabian & Clendenin, Salt Lake City, Utah, for Associates Financial Services of Utah.

Stephen B. Mitchell, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Pioneer Bank and Guardian State Bank.

John L. Young, Moffat, Welling & Paulsen, Salt Lake City, Utah, for Theodore Stanley.

Richard D. Burbidge, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Frank and Juanita Hatch.

Collin King, Giauque & Williams, Salt Lake City, Utah, for defendant Grant Affleck.

Randolph L. Dryer, Parsons, Behle & Latimer, Salt Lake City, Utah, for Frank K. Stuart, trustee.

Duane A. Burnett, Bountiful, Utah, for defendants, Mary Jo Christensen and Sandy Winklesky, Steve Olpin and Valerie Krista Parker.

Lester A. Perry, Salt Lake City, Utah, for Beehive Thrift & Loan and Robert M. Bridge.

James C. Swindler, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for defendant Sisam and plaintiffs Sisam and Armitage.

Michael Neider, Mortensen & Neider, Midvale, Utah, for Rod Goodman.

William W. Barrett, Marsden, Orton & Liljenquist, Salt Lake City, Utah, for BMW Auto Leasing, Inc.

Donald J. Purser, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for Kenneth Taylor.

LeRoy S. Axland, Larry G. Reed, Suitter, Axland, Armstrong & Hanson, Salt Lake City, Utah, for Home Sav.

James D. Gordon II, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for Wells.

Mark C. McLachlan, David H. Schwobe, Turner, Perkins, Schwobe & McLachlan, Salt Lake City, Utah, for Keith M. Pearson.

Gary A. Weston, John K. Mangum, David Swope, Nielsen & Senior, Salt Lake City, Utah, for Abbotts.

B. Ray Zoll, Salt Lake City, Utah, for defendants Morrison and Middleton and plaintiffs Merrison, Stevenson, Ashton and Baer.

Mark O. Van Wagoner, Lewis T. Stevens, Jeffrey L. Shields, Greene, Callister & Nebeker, Salt Lake City, Utah, for Zions First Nat. Bank, Barclays American/Financial, Inc., Barclays-American Corp., Lockhart Co., Steve Kramer, Richard L. Gray, Sue Birrell, and Robyn M. Brown.

William T. Thurman Jr., McKay, Burton, Thurman & Condie, Salt Lake City, Utah, for George Klinell and Clark Brown.

Thomas A. Quinn, Kent M. Murdock, Ray, Quinney & Nebeker, Salt Lake City, Utah, for Home Sav. & Loan and William H. Cox.

William G. Fowler, Robert D. Rose, Roe & Fowler, Salt Lake City, Utah, for debtors, Afco Enterprises, Inc., Afco Development Corp. and Afco Inv. Corp.

Edward J. McDonough, D. Miles Holman, Janet C. Graham, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for West Beneficial Finance, Inc., Gregory Gunderson, Amy Provo, and David C. Anderson, as trustee.

Kent B. Linebaugh, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, Utah, for Foothill Thrift & Loan, Utah Firstbank, Harold E. Turley, Jr., Stanley R. Hoffman, Larry G. Grant, and Edward L. Burton, III as trustee.

## ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT, DECLARATORY RELIEF, AND REGARDING RESCISSION

KANE, District Judge, Sitting by Designation.

Defendant, Home Savings & Loan has moved for an order regarding rescission, partial summary judgment under Rule 56, F.R.Civ.P., and declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.*

Home is one of sixteen lending institutions involved in this action. There are over six-hundred plaintiffs. Sixty-three of those plaintiffs are persons who borrowed money from Home in November and December, 1981, or January, 1982. The loans were secured by deeds of trust, in favor of Home, on plaintiffs' principal residences. The loan proceeds plaintiffs received were then endorsed over to various Afco enterprises for investment purposes.[1] Afco's dreadful failure culminated in bankruptcy

---

1. There were three Afco corporations in existence at the time plaintiffs made their respective investments. Afco promised investors very attractive returns for the use of the investors' funds. It offered a variety of benefits, including the use of expensive, exotic automobiles, assignment of payments by sales of time share intervals at Sherwood Hills Resort, trust fund benefits, and a variety of other amenities. Afco promised its investors that it would make the monthly installment payments on their loans from Home. This, Afco was unable to

and left plaintiffs owing to Home the amounts of the loans secured by the deeds of trust. Over twenty other claims for relief are in plaintiffs' complaint, and although the issues raised here may reflect factual similarities between other plaintiffs and other defendants in this same action, I deem these motions to be discrete between the plaintiffs and defendant herein vis-a-vis other plaintiffs and other defendants. The parties have submitted briefs, affidavits, excerpts from depositions, and supporting exhibits. Oral arguments were heard April 18, 1983.

At issue is whether Home complied with the requirements of the Truth in Lending Act, 15 U.S.C. § 1635, which governs the procedure for the rescission of certain credit transactions.[2] Also applicable to the subject of this motion is Regulation Z, 12 C.F.R. 226.9 (1981), 12 C.F.R. 226.23(a)(2) (effective April 1, 1981, but optional until October 1, 1982), and 15 U.S.C. §§ 1601 *et seq.*[3] These statutes require that certain disclosures be conveyed to the credit consumer; that specific disclosures must be made to the consumer regarding the right to rescind a credit transaction which results

---

do, and the Afco entities filed for a Chapter XI reorganization in the United States Bankruptcy Court, Central Division, Utah, in 1982, after their financial collapse.

2. Sections 1635(a) and (b) state the following:

"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

"(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the

creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor within [sic] [without] obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."

3. Section 226.9, right of rescission, reads:

(b) Notice of opportunity to rescind. Whenever a customer has the right to rescind a transaction under paragraph (1) of this section, the creditor shall give notice of that fact to the customer by furnishing the customer with two copies of the notice set out below, one of which may be used by the customer to cancel the transaction. Such notice shall be printed in capital and lower case letters of not less than 12 point boldface type on one side of a separate statement which identifies the transaction to which it relates. Such statement shall also set forth the entire paragraph (d) of this section, "Effect of rescission." If such paragraph appears on the reverse side of the statement, the face of the statement shall state: "See reverse side for important information about your right of rescission." Before furnishing copies of the notice to the customer, the creditor shall complete both copies with the name of the creditor, the address of the creditor's place of business, the date of consummation of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the customer may give notice of cancellation. Where the real property on which the security interest may arise does not include a dwelling, the creditor may substitute the words "the property you are purchasing" for "your home," or "lot" for "home," where these words appear in the notice.

in a security interest of the creditor in the residence of the consumer. Further, the terms of the transaction must be clearly set forth, such as the cost of the loan, the finance charges, interest rates, prepaid finance charges, monthly payments, and the nature of the security interest.[4]

Plaintiffs have alleged that the funding institutions have failed to comply with the Act and therefore should forfeit any right of repayment from plaintiffs.[5] They complain that defendants failed to extend to plaintiffs their right to rescind the loans. Defendant Home has made the subject of plaintiffs' allegations the issue on its motion for declaratory relief and summary judgment. The thrust of Home's argument is that it has complied with § 1635. Home argues that at the time the loans were closed, each borrower received and signed the notices of the right of rescission and the loan terms disclosure statements. Home states that in signing these documents, each borrower acknowledged the terms of the loan and the right to rescind. Home further states that its officers gave instructions to Home employees to deliver the nec-

essary loan closing documents to plaintiffs for their signatures and that Elaine Reese, a Home employee, assured the officers this was done.[6] I note that the notices of rescission and the loan terms disclosure statements, signed by all plaintiffs, conform to the requirements of Regulation Z, 12 C.F.R. 226.9(b), (d), and 15 U.S.C. §§ 1601 et seq. Home also states that it received no timely written notice of rescission from plaintiffs within three days of the closing of any loan as required by the Act; that it received only one writing from a plaintiff seeking rescission, not timely, but did not implement rescission procedures, and two letters seeking rescission were received without reference to the Truth in Lending Act.[7]

Once this action was commenced, Home started its discovery. After Home deposed plaintiffs, it became aware that there was evidence tending to indicate that Home had not met the requirements of § 1635. Home states that some or all of the plaintiffs, at their depositions, testified that they did not know they had signed a notice of rescission statement; they did not receive copies of

---

4. 15 U.S.C. §§ 1601 et seq.

5. Paragraphs 74–78 of the complaint are set forth below:

74. In consummating said transactions, the funding institutions acquired a security interest in the principal residences of most plaintiffs which security interest did not constitute a first lien or equivalent security interest against said dwellings created to finance the acquisition of said dwellings.

75. In making said transactions, the funding institutions failed to extend to the plaintiffs an adequate opportunity to rescind the subject transactions.

76. The subject transactions fall within the contemplation and purview of 15 U.S.C. § 1635 of the Federal Consumer Protection Act and of Regulation Z, 12 C.F.R. § 226.9, as promulgated thereunder, and the funding institutions, in making said transactions, have failed to comply with the provisions thereof.

77. Plaintiffs hereby tender to funding institutions the return of the documents received from said Defendants, together with any value which the plaintiffs may have received from said defendants incident to the subject transactions and hereby demand rescission of said transactions and demand return of all consideration which the Plaintiffs may have paid or furnished incident thereto.

78. The plaintiffs are entitled to an order of this court determining that any right of the funding institutions to seek reimbursement of the amounts distributed pursuant to the subject transactions be pursued and exercised only as against AFCO and that there be no obligation on the part of plaintiffs for the refund or repayment of any of said amounts.

Preliminarily, I noted that the issue raised herein is discrete between Home and the sixty-three plaintiffs that secured loans from Home. This is relevant to the wording in paragraphs 74–78 in that plaintiffs have made these allegations against all defendants. There may be factual similarities between other plaintiffs and other defendants regarding loan transactions, but the ruling here will not be dispositive of any similar motions raised by other defendants.

6. The delivery requirement is set forth in 1635(c) as follows:

Notwithstanding any rule of evidence, written acknowledgement of receipt of any disclosures required under this title [15 U.S.C.S. §§ 1601 et seq.] by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

7. Smolka affidavit at 4.

the notice and forms to be used to give notice of rescission, and that some of the notices were pre-dated. On December 29, 1982, it sent a letter to each borrower, enclosing two copies of a notice of right of rescission, a copy of Regulation Z, originally prepared, and a new Regulation Z disclosure statement. This letter extended anew the plaintiffs' right to rescind their loans. To accomplish this, Home delivered to First Security Bank of Utah, N.A., Trust Department, as escrow agent, plaintiffs' promissory notes, the deeds of trust, and deeds of reconveyance. It instructed the escrow agent to hold the documents and release them only upon a plaintiff's tender of the outstanding amount of the respective loans involved owing to Home. No plaintiffs acted upon this new offer of rescission. March 11, 1983, was the final day in which plaintiffs could rescind, according to Home's new rescission offer. The escrow agreement, not fully discussed here, was signed between Home and First Security on January 24, 1983.

Home argues that, as a matter of law, it is entitled to a partial summary judgment and declaratory relief in that it has complied with the requirements of 15 U.S.C. §§ 1601 *et seq.,* 15 U.S.C. § 1635; Regulation Z, 12 C.F.R. 226.9; that on account of the failure of plaintiffs to tender their outstanding loan amounts to the escrow agent, the plaintiffs have elected to waive their rights to rescind their respective loans. Home also calls upon the equitable powers of this court to establish a rescission procedure, should it be determined that the prior existing efforts to comply with the relevant Act have not been met.[8]

Plaintiffs resist Home's motion. They argue that the procedure for rescission implemented by defendant did not meet statutory requirements, and defendant should forfeit, albeit a drastic result, its security interests in plaintiffs' residences. Entwined in this argument are elements that touch upon the more fundamental claims of plaintiffs. Notwithstanding the rescission issue, plaintiffs see this as merely an aspect of a relationship between the Afco corporations and the lender; that Grant Afflect, Afco's head man, was in such a close business relationship with Home that the procedures for granting loans, the notices of rescission, and the statements of disclosure could not meet the requirements of the Act. Plaintiffs assert that many of the documents were pre-dated to make it appear that the three day rescission period had run so that the loans could not be rescinded. Plaintiffs further contend that Home did not participate in the preparation of the loan documents to a large degree;[9] that this circumstance allowed the alleged improper procedures to occur, and that Home should not now prevail on its motion because it authored its violation of § 1635.

## SUMMARY JUDGMENT

Rule 56, F.R.Civ.P., permits the entry of a partial summary judgment on a claim when there is no genuine question of material fact outstanding and the subject matter of the issue is wholly distinct and separable from other legal theories underlying the complaint. In determining whether summary judgment should be granted or denied, I must consider factual inferences tending to show triable issues in the light most favorable to the existence of the issue before me, *Luckett v. Bethlehem Steel Corporation,* 618 F.2d 1373, 1377 (10th Cir. 1980), citing *Mustang Fuel Corporation v. Youngstown Sheet and Tube Company,* 516 F.2d 33, 36 (10th Cir.1975). Where different ultimate inferences may properly be drawn, the case is not appropriate for summary judgment. *Id.,* citing *United States*

---

8. Section 1635(b) empowers the court to condition the granting of rescission and to modify the procedures for rescission. *See Brown v. National Permanent Federal Savings & Loan Association,* 683 F.2d 444, 447 (D.C.Cir.1982); *Rudisell v. Fifth Third National Bank,* 622 F.2d 243 (6th Cir.1980).

9. William Cox's deposition, at 51, reflects that an employee of Afco occupied some office space at Home to help Elaine Reese, a Home employee, process the loan agreements between plaintiffs and Home. Cox was an officer of Home.

*v. Diebold, Inc.,* 396 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176; *Webb v. Allstate Insurance Company,* 536 F.2d 336, 339 (10th Cir.1976).

As I have already found, Home has complied with the requirements of Regulation Z, 12 C.F.R. 226.9(b), (d), and 15 U.S.C. §§ 1601 *et seq.* with respect to the adequacy of the information that should be conveyed to the credit consumer. The notices of right of rescission, signed by all plaintiffs, comprise Home's exhibit "B" attached to its motion. Each contains boldface type, putting the borrower on notice that a security interest exists in the respective residences involved in these loan transactions, and the notices specifically spell out the effect of rescission. *See* note 3, *supra.* Home's exhibit "C" comprises the disclosure statements, as required by 15 U.S.C. §§ 1601 *et seq.* These, too, were signed by all plaintiffs herein. Each document discloses interest computations, annual percentage rates, finance charges, the amount of the loan, prepaid finance charges, the amount financed, principal and interest, total monthly payment, total number of payments, insurance information, and the nature of the security interest on the obligor's residence. This determination of adequacy, however, does not end my inquiry. I must now determine whether Home complied with § 1635 in all respects.

Section 1635(a) states that an obligor shall have the right to rescind the transaction when a security interest will be retained in the principal dwelling of the obligor. Such is the present circumstance. Plaintiffs clearly had the right to rescind their respective loans. Home possessed security interests in each of plaintiffs' residences as reflected in Home's exhibits "B" and "C". The borrower has this right to rescind until midnight of the third business day following the consummation of the transaction, or "the delivery of the disclosures required under this section and all

other material disclosures required under this title, whichever is later. . . . " If the borrower properly rescinds, he is not liable for finance or other charges, and any security interest which existed because of the loan becomes void. Section 1635(b).

■ This subpart also sets forth the procedure one is to follow to effect a rescission. The creditor must act first.[10] He must, within twenty days after the obligor exercises the right of rescission, give the creditor the appropriate notice under the Act, and return to the debtor "any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." After this procedural step has been accomplished by the creditor, the debtor must then "tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value." *Id.*

■ The loan transactions involving plaintiffs took place in November and December, 1981. According to the requirements of the Act, the relevant notices and disclosures are to be a part of each transaction. The notices of right of rescission and disclosure statements are presumed to have been delivered where written acknowledgement appears thereon. Note 6, *supra.* Plaintiffs did, in fact, sign these documents, but the mere acknowledgement of the material disclosures is not conclusive that the disclosures were made consistent with the major purpose of the Act; that the terms of the transaction must be conveyed to the debtor in a meaningful fashion. *Brown v. National Permanent Federal Savings & Loan Association,* 526 F.Supp. 815, 821 (D.C. D.C.1981); 15 U.S.C. § 1601(a). In this instance there is evidence to suggest that the pertinent documents were not conveyed in a meaningful manner to the obligors. Al-

---

**10.** Although a court is empowered to fashion the conditions of rescission where the equities so require, the procedural steps that are set forth in 1635(b) require strict compliance. *See* e.g., *Bustamante v. First Federal Savings &* *Loan Association,* 619 F.2d 360, 365 (5th Cir. 1980), citing *Harris v. Tower,* 609 F.2d 120, 123 (5th Cir.1980); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir.1980).

though Home takes the position that it does not concede that it failed to comply with § 1635, it also stated that after taking the depositions of plaintiffs, it became aware that it may not have fulfilled the disclosure requirements under the Act. This position was reflected by Home's subsequent action in offering rescission "anew" to plaintiffs in December, 1982.

The contentions of plaintiffs are supported by the deposition testimony of Hancock and Linford. For example, in the deposition of Terry Hancock, plaintiffs' exhibit "6," Hancock was not even aware that he was ultimately responsible for making the payments on the loan he obtained from Home because he had not directly dealt with Home, but with Afflect instead. After closing the loan transaction personally with Afflect at the Hancock's residence, it was a week later that the Hancocks received from Home a copy of the deed of trust which secured their loan from Home. Further, Hancock testified that Afflect presented to him several documents for his signature; that the documents were explained in a "nonchalant way," and in a hurried manner because Afflect was anxious to keep another appointment. Hancock also testified that nothing was said to him about a right to rescind the loan transaction until after it had been consummated, and that it was his understanding that Afco would be making the payments on the loan. Likewise, Melvin Linford, at his deposition, plaintiffs' exhibit "7," testified that his only dealings with Home occurred when Home informed him in February, 1982, that his loan payment was past due on the second mortgage Linford had obtained from Home, secured by a deed of trust, in November, 1981; that the loan transaction was the result of Linford's exclusive dealings with Afflect for the purpose of investing in the Afco enterprises, and that it was Linford's understanding that he would not be responsible for payments on the loan.

11. This tender was embodied in plaintiffs' complaint, paragraph 84, May 10, 1982, in an adversary proceeding in the United States Bankruptcy Court, Central Division, Utah. The proceeding was part of the bankruptcy case in

Under § 1635(b), note 2, *supra,* it is required of the creditor to return to the obligor, after the obligor exercises the right of rescission by giving notice within three days of the consummation of the transaction, "any money or property given as earnest money, downpayment, or otherwise . . . and take action to reflect the termination of any security interest created under the transaction." Home takes the position that it followed this procedure in its December 29, 1982 offer of rescission to plaintiffs. The escrow agreement with First Security, according to Home, represented Home's performance with respect to the termination of the security interests in the plaintiffs' residences. Home conditioned the termination of the security interests upon the return of the net loan proceeds from each respective loan. This is inconsistent with the requirement of the Act. The creditor must terminate the security interest first.

After the creditor has performed all obligations, the debtor must "tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."

■ In what plaintiffs believed was the fulfillment of their obligation under § 1635 by giving notice to the creditor of the intention to rescind, subsequent to the performance of what Home believed was its fulfillment of the creditor's obligation under the same section, plaintiffs made the following tender: [11]

Plaintiffs hereby tender to Funding Institutions the return of the documents received from said documents, together with any value which the plaintiffs may have received from said defendants incident to the subject transactions and hereby demand rescission of said transactions and demand return of all consideration which the plaintiffs may have paid or furnished incident thereto.

which the Afco corporations presently seek Chapter XI reorganization. This tender was also repeated in the complaint in this action July 2, 1982, paragraph 77. *See* note 5, *supra.*

The tender was deficient because no loan proceeds were a part of that tender, only the loan documents. Since the tender was deficient, the creditor did not forfeit its interest in the loans for not taking possession of the loan documents within twenty days after plaintiffs tendered them. Plaintiffs argue that Afco, not plaintiffs, received the value of the loan transactions and therefore they tendered the benefits they received from the transaction, the loan documents. Certainly, this construction is not contemplated by the Act. *See Powers v. Sims and Levin,* 542 F.2d 1216, 1220–21 (4th Cir.1976); *Bustamante v. First Federal Savings & Loan Association,* 619 F.2d 360, 365 (5th Cir.1980). The purpose of § 1635(b) is to restore the parties as much as possible to the status quo ante. *Sosa v. Fite,* 498 F.2d 114, 119 (5th Cir.1974). No genuine attempt to do so as yet has occurred.

█ From the foregoing procedural history between these parties and the factual contentions of both, as exemplified by the pleadings, affidavits, excerpts from depositions, and exhibits, it clearly can be concluded that neither Home nor plaintiffs complied with the requirements of § 1635(a) and (b).

█ Title 15 U.S.C. § 1639(b) requires that the pertinent disclosures on a consumer loan or credit transaction be made before the credit is extended to the obligor. This information can be contained in the note or other evidence of indebtedness to be signed by the obligor. *See Rudisell v. Fifth Third Bank,* 622 F.2d 243, 246 (6th Cir.1980), citing *Wachtel v. West,* 476 F.2d 1062, 1064–5 (6th Cir.1973), *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973). The loans that were made to plaintiffs in November and December, 1981, were required to contain the applicable disclosures. There is evidence to support an inference that Home did not supervise the loans to plaintiffs and did not follow standard operating procedures in granting them. Of course, it

would be difficult, at best, for Home to assure that the material disclosures were meaningfully conveyed to plaintiffs if it did not supervise the loan transactions. That Home tried to assure its compliance with the Act and remove any previous defective disclosures by extending anew to plaintiffs their right of rescission an entire year later could not vindicate its initial violation at the inception of the loans, the time when credit had been extended. Accordingly, there is a genuine issue of material fact with respect to Home's compliance with the requirements of 15 U.S.C. § 1635. Therefore, summary judgment cannot be granted. Moreover, plaintiffs did not meet the requirements either. The result of the parties' efforts toward employing the procedural steps as outlined in § 1635 for rescission of the loans has been fruitless. Both sides failed to comply with § 1635 and are in continuing violation of the Act. At present, I find that plaintiffs have a continuing right to effect rescission of the subject loans. *Rudisell, supra,* at 247, and citations therein. The three day limitation period, § 1635(a), allowing the obligor to rescind a credit transaction, is not yet vitiated. Section 1635(f) allows the obligor a right of rescission for three years after the date of consummation of the transaction.

█ I am also mindful that the court has equitable power to fashion the conditions for rescission, as allowed by § 1635(b), but I resist this request by Home. It is my opinion that those parties who are genuinely interested in effecting the rescission of any respective loan will do so. The procedural steps are clearly set forth in § 1635. For the court to fashion the procedures or conditions for rescission in this case, especially in view of the number of plaintiffs involved and their obviously diverse financial conditions, would, I believe, be impracticable and may result in prejudice. As mentioned, the obligors herein retain the right to rescind consistent with the conditions that are outlined in § 1635(f).[12] Accordingly, it is therefore

12. Even with this ruling, however, I will consider any specific plan for rescission which any of the parties might care to submit.

ORDERED, that defendant's motion for partial summary judgment pursuant to Rule 56 F.R.Civ.P. is denied; it is further

ORDERED, that the motion for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.,* is denied; it is further

ORDERED, that the motion for order regarding rescission is denied.