**CITY CONSUMER SERVICES, INC., Plaintiff,**

v.

**David G. and Kathryn B. HORNE, Defendants.**

**Weldon S. ABBOTT, et al., Plaintiffs,**

v.

**Carvel R. SHAFFER, et al., Defendants.**

**Civ. A. Nos. C82–0235K, C82–0628A.**

United States District Court, D. Utah.

Jan. 18, 1984.

John Ashton, Prince, Yeates & Geldzahler, Salt Lake City, Utah, for Barclays American Corp., Richard L. Gray, Sue Birrell, and Robyn M. Brown.

LeRoy S. Axland, Larry G. Reed, Suitter, Axland, Armstrong & Hanson, Salt Lake City, Utah, for Home Sav. & Loan.

William W. Barrett, Marsden, Orton & Liljenquist, Salt Lake City, Utah, for BMW Auto Leasing, Inc.

David B. Boyce, Backman, Clark & Marsh, Salt Lake City, Utah, for Homes Sav. & Loan and William Cox.

Richard D. Burbidge, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Frank & Juanita Hatch.

Duane A. Burnett, Bountiful, Utah, for defendants, Mary Jo Christensen, Sandy Winklesky, Steve Olpin and Valerie Kosta Parker.

Rulon Burton, Salt Lake City, Utah, for William Perry.

Randolph L. Dryer, Parsons, Behle & Latimer, Salt Lake City, Utah, for Frank K. Stuart, Trustee.

M. Byron Fisher, Fabian & Clendenin, Salt Lake City, Utah, for Associates Financial Services of Utah.

William C. Fowler, Robert D. Rose, Roe & Fowler, Salt Lake City, Utah, for debtors, AFCO Enterprises, Inc., AFCO Development Corp. and AFCO Inv. Corp.

James D. Gordon, III, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for plaintiff Wells.

David A. Greenwood, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for City Consumer Services, Inc.

Denton M. Hatch, Christensen, Jensen & Powell, Salt Lake City, Utah, for plaintiff Bahrs.

George A. Hunt, David W. Slaughter, Snow, Christensen & Martineau, Salt Lake City, Utah, for AVCO Financial Services of Utah, Inc.

Royal K. Hunt, Salt Lake City, Utah, for Holladay Bank & Trust, David Pinney.

Dwight L. King, Salt Lake City, Utah, for Draper Bank & Trust.

Carmen E. Kipp, Kipp & Christensen, Kent B. Linebaugh, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, Utah, for Foothill Thrift & Loan, Utah FirstBank, Harold E. Turley, Jr., Stanley R. Hoffman, Larry G. Grant, and Edward L. Burton, III as Trustee.

William D. Marsh, Ogden, Utah, for Graham C. Shaw.

Mark C. McLachlan, David H. Schwobe, Turner, Perkins, Schwobe & McLachlan, Salt Lake City, Utah, for Keith M. Pearson.

Stephen B. Mitchell, Burbidge, Mabey & Mitchell, Salt Lake City, Utah, for Pioneer Bank and Guardian State Bank.

Jack H. Molgard, Brigham City, Utah, for plaintiff Spickermans.

Paul T. Moxley, Salt Lake City, Utah, for defendant Michael D. Wright.

Michael Neider, Mortensen & Neider, Midvale, Utah, David Young Payne, Salt Lake City, Utah, for Raymond Lambert.

Lester A. Perry, Salt Lake City, Utah, for Beehive Thrift & Loan and Robert M. Bridge.

Bennett P. Peterson, Bountiful, Utah, for DuWayne R. Swenson.

Lowell S. and Laverne Peterson, pro se.

Donald J. Purser, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for Kenneth Taylor.

Thomas A. Quinn, Kent M. Murdock, Ray, Quinney & Nebeker, Salt Lake City, Utah, for Home Sav. & Loan & William H. Cox.

Ben Rawlings, Salt Lake City, Utah, for Brad Freckleton.

Carvel R. Shaffer, Bountiful, Utah, for defendant, Carvel R. Shaffer.

Rodney G. Snow, Clyde, Pratt, Gibbs & Cahoon, Salt Lake City, Utah, for Cindy Mitchell.

Stephen G. Stoker, Fox, Edwards & Gardiner, Salt Lake City, Utah, for Janet J. Palmer.

James C. Swindler, Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for defendant Sisam and plaintiffs Sisam and Armitage.

William T. Thurman, Jr., McKay, Burton, Thurman & Condie, Salt Lake City, Utah, for George Klinell and Clark Brown.

Mark O. VanWagoner, Lewis T. Stevens, Greene, Callister & Nebeker, Salt Lake City, Utah, for Zions First Nat. Bank, Lockhart Co., Steve Kramer.

Craig T. Vincent, Salt Lake City, Utah, for Melvin Lancaster.

Gary A. Weston, John K. Mangum, David Swope, Nielsen & Senior, Salt Lake City, Utah, for Abbott plaintiffs.

John L. Young, Moffat, Welling & Paulsen, Salt Lake City, Utah, B. Ray Zoll, Zoll & Hall, Salt Lake City, Utah, for defendants Morrison & Middleton and plaintiffs Merrison, Stevenson, Ashton and Baer.

## MEMORANDUM OPINION AND ORDER

KANE,[*] District Judge.

This matter is before me on Home Savings and Loan's motion for partial summary judgment pursuant to Rule 56 Fed.R. Civ.P. Oral argument has been requested, and shall be denied. This order will be dispositive of the motion.

The subject motion concerns the procedure for the rescission of a consumer credit transaction under the provisions of the Truth in Lending Act, 15 U.S.C. section 1601 et seq., and specifically section 1635(b).[1] Home seeks an order that will

---

[*] Sitting by designation.

1. Sections 1635(a) and (b) state the following:

"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

"(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the credi-

condition the procedure for rescission by requiring plaintiffs herein to tender the net amount of the loan proceeds they purportedly received from Home.

This matter is part of a larger consolidated action involving numerous lending institutions and approximately 600 plaintiffs. The core of the dispute in this action concerns several hundred defaulted loans. These loans were obtained by all the plaintiffs in this action. The proceeds derived from the respective loans were used to invest in three Afco corporations. Grant Affleck, Afco's president, initiated a massive investment program throughout the Salt Lake City, Utah area during 1981. The investment packages were offered through an offering circular. Presently, all the Afco entities are bankrupt and their petition for reorganization under Chapter XI of the Bankruptcy Code is currently pending before the Bankruptcy Court for Utah's Central Division.

The investment scheme usually required the investor to take out a second mortgage on his primary residence, which would then be secured by a trust deed executed in favor of the lender from which the loan would be obtained. In most all instances, the loan proceeds check would then be endorsed directly over to Affleck or one of the Afco corporations.

Afco promised handsome returns to its investors. Among the many promises Afco made was to guarantee to each investor payment of the monthly second mortgage note. To back up this promise, Afco provided the investor with a security interest in real property it owned. But Afco failed in its promises, which caused the respective loans to go into a default status. The lenders subsequently commenced foreclosure proceedings against the residences of plaintiffs, which gave rise to this action.

Plaintiffs have alleged, among other claims, that the lenders and Afco were joint venturers in the marketing of the investment package; that an agency relationship existed between Afco and the various lenders. The complaint also alleges that the lenders failed to comply with the Truth in Lending Act disclosure requirements. Under the Act, the person or entity that extends credit to another during the course of a consumer credit transaction while retaining a security interest in the primary residence of the one to whom credit is extended, must generally disclose the full terms of the transaction, and must convey to the debtor his right to rescind the transaction within a certain prescribed statutory time after consummation of the transaction.

Plaintiffs herein, Richard L. and Cynthia B. Hind, husband and wife, are among the plaintiffs who borrowed money from Home to invest in the Afco corporations. Like so many others, Afco failed to pay the Hinds' monthly note, and Home looked to the Hinds for payment. The Hinds had borrowed $12,000. The net amount of the loan they purportedly received was $11,511.67. That amount reflects deductions for loan closing costs that were charged by Home.

Under the investment agreement with Afco, the Hinds were to receive $1,200 annually for approximately two or three years and then the original amount invested would be returned to them. It would be helpful at this time to outline some of the more salient events which resulted in Home's loan to the Hinds.

First, the Hinds never dealt with Home directly about the loan. Jeff Tebbs, also a

tor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor ownership of the property vests in the obligor within [sic] [without] obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."

plaintiff in this action, made contact with the Hinds in early November, 1981. At that time Tebbs made a sales pitch to the Hinds about the Afco investment plan. He utilized flip charts and other sales techniques. After hearing of the Afco plan, the Hinds expressed their interest in investing with Afco. Tebbs apparently set up a meeting between Affleck and the Hinds. The meeting with Affleck occurred November 28, 1981, at which time the Hinds signed numerous documents. Richard Hind testified at his deposition that he and his wife felt they were not obligated or committed to either Home or Afco after the meeting; that if they had a legal obligation, it was to Affleck only; that Affleck was using the Hinds' credit based on the equity the Hinds had accumulated in their residence. The Hinds left that meeting without any of the documents they signed; Affleck kept all of them.

The next contact that Hinds had with Afco occurred a few days following their meeting with Affleck. It was at that time that a messenger came to the Hinds' residence and presented the check from Home made payable to the Hinds in the amount of $11,511.67. The messenger requested the Hinds to endorse the instrument over to Afco, which they immediately did. A few days following their endorsement of the Home check the Hinds received by mail a document apprising them that Afco would be making their second mortgage payments. Shortly thereafter, the Hinds were contacted by Home advising the Hinds they were responsible for making the payments on the loan, which ultimately went into default. This consolidated action against the various lenders was commenced in July, 1982. As mentioned, all plaintiffs in this action alleged that the lenders failed to extend to them an adequate opportunity to rescind their respective loans and failed to comply with the Truth in Lending disclosure requirements.

Rescission under section 1635(b) requires, among other things, the debtor-obligor to tender to the creditor the property received as a result of the transaction, namely in this instance the loan proceeds. The Hinds' first attempt at rescinding their loan with Home by tendering the property of the transaction to Home was embodied in paragraph 77 of the complaint.[2] Upon receiving notice of the intent of the debtor to rescind the transaction, the creditor is required to terminate his security interest in the residence of the debtor. This step must be accomplished before the debtor is required to return the property he received.

During the course of discovery in this action, evidence came to light that Home may not have fully complied with the rescission procedures as outlined by section 1635(b). Therefore Home extended anew to all plaintiff borrowers the right to rescind their loans. This new offer took place in late December, 1982. Simultaneously, Home filed a motion for order regarding rescission, for partial summary judgment, and for declaratory relief. I ruled on Home's motion and entered an order dated May 11, 1983. *See Abbott v. Shaffer*, 564 F.Supp. 1200 (D.Utah 1983). Home requested that I compel the Hinds and other borrowers to return to Home the respective net loan proceeds each borrower received as a condition to the exercise of the borrowers' right to rescind. I resisted Home's request. *Id.* at 1208. At the time the motion was filed and as part of the arguments in the briefs, both plaintiffs and defendant contended they had complied with the requirements of section 1635. Thereafter, on September 13, 1983, Home, seeking to comply with section 1635(b), by terminating its security interest in the Hinds' residence, sent a letter to them indicating its desire to complete the rescission

---

**2.** Plaintiffs made this tender of property in paragraph 77 of the complaint which reads:

77. Plaintiffs hereby tender to Funding Institutions the return of the documents received from said Defendants, together with any value which the Plaintiffs may have received from said Defendants incident to the subject transactions and hereby demand rescission of said transactions and demand return of all consideration which the Plaintiffs may have paid or furnished incident thereto.

process and enclosed an executed reconveyance of the Hind trust deed which formed the security for the loan Home issued to them. This reconveyance terminated Home's security interest in the Hind residence. In response to Home's recent effort finally to complete the rescission process, the Hinds tendered the following documents to Home: a corporate promissory note in the principal amount of $12,000, dated November 28, 1982 which was made payable to the Hinds by Afco Enterprises; a preliminary agreement and assignment of ³/₂₇₅₀ths interest in time share intervals at Sherwood Hills Resort, and a check in the amount of $1,200 from Afco made payable to the Hinds, which represented the first payment on the Hinds investment. The Hinds contend that the above documents represent the property of the loan transaction and the benefit they received from it. They contend that this tender constitutes compliance with their obligation under section 1635(b). Home disagrees.

Home filed this motion for partial summary judgment in November, 1983, seeking an order compelling the Hinds to tender the net amount of the loan proceeds it disbursed on behalf of the Hinds. Home also seeks interest on the amount sought. Plaintiffs have submitted an opposition brief and Home has filed its reply dated December 19, 1983. Thus, at issue in this motion is whether the documents the Hinds tendered to Home constitute the property required to be returned to the creditor under section 1635(b).

## SUMMARY JUDGMENT

Rule 56 Fed.R.Civ.P. permits entry of summary judgment on a claim when there is no genuine issue of material fact outstanding. *Adickes v. S.H. Kress Company,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corporation,* 618 F.2d 1373, 1377, 1383 (10th Cir.1980). As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980).

In order to determine the propriety of summary judgment I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. *Id.* Summary judgment is not a substitute trial by affidavit. *Ando v. Great Western Sugar Company,* 475 F.2d 531, 535 (10th Cir.1973). No margin exists for disposition of factual issues, nor does summary judgment serve as a substitute for trial when there are disputed facts, *Commercial Iron & Metal Company v. Bache & Company, Incorporated,* 478 F.2d 39, 41 (10th Cir.1973). Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted. *United States v. Diebold, Incorporated,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1309 (10th Cir.1980).

Mindful of these considerations, I find there is a genuine issue of material fact outstanding concerning whether the documents in question constitute the property to be returned to the creditor under the provisions of section 1635(b).

Home relies on *Rachbach v. Cogswell,* 547 F.2d 502 (10th Cir.1976), in which the court upheld entry of judgment against the rescinding debtor in the amount of the unpaid balance of the loan. The Tenth Circuit Court also affirmed the trial court in its decision to award interest on the loan amount reasoning that the debtor enjoyed the benefit of them. *Id. at* 505. The Hinds contend that a correct result was achieved in the *Rachbach* case, and that it is consonant with the requirements of the rescission statute. In this instance, the Hinds contend they never received the benefit of the $11,511.67 net loan amount and, therefore, should not be required to tender that amount to Home as a condition of rescission. The Hinds rely on *Brown v. National Permanent Federal Savings and Loan Association,* 683 F.2d 444 (D.C. Cir.1982), a case arising under section 1635(b). There Brown obtained a loan from National Permanent for rehabilitation

work on her home. The funds were placed in escrow and were to be disbursed to the contractor as the work was completed. Brown eventually elected to rescind the loan on account of difficulties she encountered with the contractor. The case was remanded to the trial court for a determination of whether Brown received any benefit from the rehabilitation work done on her home. In considering the authorities submitted by the parties and the issues and complex nature of this entire case, I find that the circumstances surrounding the issuance of the loan to the Hinds was infused with questionable lending practices. Those practices are the subject of this action and the issue raised here bears upon them. There is a genuine issue of material fact regarding whether the Hinds' tender of the above-described documents constituted the property to be returned to the creditor under section 1635(b). I conclude therefore that the Hinds are entitled to have this factual issue resolved by a trial on the merits. It is therefore

ORDERED that Home Savings and Loan's motion for partial summary judgment is denied. It is further

ORDERED that plaintiffs' request for oral argument is denied.